UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD STOWELL, an individual,

    Plaintiff and Counter-Defendant,

v.

JPMORGAN CHASE BANK, NA,

    Defendant and Counter-Plaintiff.

Case No. 09-12367
Hon. Anna Diggs Taylor

## NOTICE OF HEARING

**To:** JONATHAN T. WALTON, JR. (P32969)
DAVID G. MICHAEL (P68508)
Walton & Donnelly, P.C.
Attorneys for Defendant and Counter-Plaintiff
1550 Buhl Building
535 Griswold Street
Detroit, Michigan 48226
(313) 963-8989
jonathan.walton@waltondonnelly.com

    PLEASE TAKE NOTICE that Plaintiff Todd Stowell's Motion for Summary Judgment shall be heard at a time and date to be set by the Court.

McDONALD HOPKINS PLC

Dated: September 22, 2009

By: _/s/ Earl R. Johnson_
LAWRENCE V. STAWIARSKI (P54831)
EARL R. JOHNSON (P70359)
Attorneys for Plaintiff/Counter-Defendant
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 646-5070 phone
(248) 646-5075 fax
ejohnson@mcdonaldhopkins.com

{1857183:}

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

TODD STOWELL, an individual

    Plaintiff and Counter-Defendant,

v.

JPMORGAN CHASE BANK, NA,

    Defendant and Counter-Plaintiff.

Case No. 09-12367

Hon. Anna Diggs Taylor

---

| | |
|---|---|
| LAWRENCE V. STAWIARSKI (P54831)<br>EARL R. JOHNSON (P70359)<br>McDonald Hopkins PLC<br>Attorneys for Plaintiff and Counter-Defendant<br>39533 Woodward Avenue, Suite 318<br>Bloomfield Hills, Michigan 48304<br>(248) 646-5070 ☎<br>(248) 646-5075 fax<br>ejohnson@mcdonaldhopkins.com | JONATHAN T. WALTON, JR. (P32969)<br>DAVID G. MICHAEL (P68508)<br>Walton & Donnelly, P.C.<br>Attorneys for Defendant and Counter-Plaintiff<br>1550 Buhl Building<br>535 Griswold Street<br>Detroit, Michigan 48226<br>(313) 963-8989<br>jonathan.walton@waltondonnelly.com |

**PLAINTIFF TODD STOWELL'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

    Pursuant to Federal Rule of Civil Procedure 56(c) Plaintiff Todd Stowell hereby moves the Court for Summary Judgment against the Defendant/Counter-Plaintiff JP Morgan Chase Bank, N.A. for: 1) his claim for breach of contract and 2) Defendant/Counter-Plaintiff's counterclaim in its entirety.

    There was a conference between attorneys in which the nature of this Motion, and its legal basis, were explained. Concurrence in the relief sought was requested but not obtained.

{1782261:4}

A brief in support of this Motion is attached hereto.

                                                                     Respectfully submitted,

                                                                     McDONALD HOPKINS PLC

Dated:  September 22, 2009       By:   */s/ Earl R. Johnson*
                                                                LAWRENCE V. STAWIARSKI (P54831)
                                                                EARL R. JOHNSON (P70359)
                                                                Attorneys for Plaintiff/Counter-Defendant
                                                                39533 Woodward Avenue, Suite 318
                                                                Bloomfield Hills, Michigan 48304
                                                                (248) 646-5070 phone
                                                                (248) 646-5075 fax
                                                                ejohnson@mcdonaldhopkins.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD STOWELL, an individual

    Plaintiff and Counter-Defendant,

v.

JPMORGAN CHASE BANK, NA,

    Defendant and Counter-Plaintiff.

Case No. 09-12367

Hon. Anna Diggs Taylor

| | |
|---|---|
| LAWRENCE V. STAWIARSKI (P54831)<br>EARL R. JOHNSON (P70359)<br>McDonald Hopkins PLC<br>Attorneys for Plaintiff and Counter-Defendant<br>39533 Woodward Avenue, Suite 318<br>Bloomfield Hills, Michigan 48304<br>(248) 646-5070 ☏<br>(248) 646-5075 fax<br>ejohnson@mcdonaldhopkins.com | JONATHAN T. WALTON, JR. (P32969)<br>DAVID G. MICHAEL (P68508)<br>Walton & Donnelly, P.C.<br>Attorneys for Defendant and Counter-Plaintiff<br>1550 Buhl Building<br>535 Griswold Street<br>Detroit, Michigan 48226<br>(313) 963-8989<br>jonathan.walton@waltondonnelly.com |

| | |
|---|---|
| LAWRENCE V. STAWIARSKI (P54831)<br>EARL R. JOHNSON (P70359)<br>McDonald Hopkins PLC<br>Attorneys for Plaintiff and Counter-Defendant<br>39533 Woodward Avenue, Suite 318<br>Bloomfield Hills, Michigan 48304<br>(248) 646-5070 ☏<br>(248) 646-5075 fax<br>ejohnson@mcdonaldhopkins.com | JONATHAN T. WALTON, JR. (P32969)<br>DAVID G. MICHAEL (P68508)<br>Walton & Donnelly, P.C.<br>Attorneys for Defendant and Counter-Plaintiff<br>1550 Buhl Building<br>535 Griswold Street<br>Detroit, Michigan 48226<br>(313) 963-8989<br>jonathan.walton@waltondonnelly.com |

**BRIEF IN SUPPORT OF PLAINTIFF TODD STOWELL'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

NOW COMES the Plaintiff/Counter-Defendant Todd Stowell, by and through his counsel, McDonald Hopkins PLC, and for his Brief in Support of his Motion for Summary Judgment states:

{1782261:4}

**Issues Presented**

There is one issue in the instant matter.

1. The issue presented in the case at bar is whether JP Morgan Chase Bank, N.A. ("Chase") breached its agreement with the Plaintiff/Counter-Defendant to release him from certain obligations and, if so, whether Summary Judgment is appropriate

    Mr. Stowell answers: Yes; Chase answers: No.

# AUTHORITIES FOR RELIEF SOUGHT

## Case Law

*American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417 (6th Cir.1984) .................................................................................................................. 10

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242; 106 S. Ct. 2505 (1986) ................................... 7,8

*Celotex Corp. v. Catrett Bell Atl. Corp. v. Twombly,* 550 U.S. 544; 477 U.S. 317, 106 S. Ct. 2548 (1986) ................................................................................... 7,8

*Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F. 2d 934, (5th Cir. 1989) .................................................................................................................... 8

*Historic Preservation Guild of Bay View v. Burnley,* 896 F. 2d 985, 993 (6th Cir. 1989) ................................................................................................................ 8

*NAG Enterprises, Inc. v. All State Industries, Inc.,* 407 Mich. 407; 285 N.W. 2d 770 (1979) ......................................................................................................... 11

*Schmude Oil Co. v. Omar Operating Co.,* 184 Mich.App. 574; 458 N.W.2d 659 (1990) ........................................................................................................ 10

*Webster v. Edward D. Jones & Co., L.P.,* 197 F.3d 815, 819 (6th Cir.1999) .................................................................................................................... 8

## Statutes

Federal Rule of Civil Procedure 56 ................................................................................... 1,7

**Introduction**

Pursuant to Federal Rule of Civil Procedure 56(c), Plaintiff Todd Stowell ("Mr. Stowell") hereby moves the Court for an Order granting it Summary Judgment against the Defendant/Counter-Plaintiff JPMorgan Chase Bank, N.A. (successor by Merger to Bank One, N.A., the original lender, hereafter "Chase") on Mr. Stowell's claim for breach of contract. Mr. Stowell also moves for summary judgment on Defendant/Counter-Plaintiff's counterclaim, insofar as the entirety of the counterclaim disregards Defendant/Counter-Plaintiff's material breach of an agreement between the Parties that relieved Mr. Stowell from the obligations Defendant/Counter-Plaintiff seeks to enforce.

**I.   Background And Facts**

Todd Stowell is an individual residing in Novi, Michigan. At one time, Mr. Stowell, along with various other individual (as discussed below), had an ownership interest in a local Detroit restaurant, Small Plates Detroit, LLC ("Small Plates"). Chase was a lender to Small Plates. Mr. Stowell guaranteed various loans from Chase to Small Plates with a personal guaranty and a lien against his residence. The guaranty and the lien date back to 2002. Mr. Stowell has since sold his interest in the restaurant and subsequently entered into an agreement with Chase to release him from his guaranty and to discharge the lien against his residence. Mr. Stowell has performed under the agreement, but Chase refuses to do the same. Chase's refusal to honor its agreement with Mr. Stowell is a breach of the contract, and is the basis for Mr. Stowell's lawsuit.

Chase has filed a counterclaim against Mr. Stowell seeking to enforce the very obligations from which Chase agreed to relieve Mr. Stowell. Chase, a National Bank, has infinite resources which it can use to litigate Mr. Stowell into submission. Chase's defense to the

Complaint has no merit, and its counterclaim only adds to its egregious posture. Therefore, Mr. Stowell also seeks an award of legal fees and costs wrongfully incurred in prosecuting his claim.

### A. ST Projects and Loan Agreements

On August 21, 2002 Small Plates entered into a Business Loan Agreement (the "Loan Agreement") with Chase. (See Exhibit A - Verified Complaint, filed contemporaneously herewith ("Complaint") at ¶ 5 and Exhibit 1 thereto.) On August 21, 2002, ST Projects, LLC ("ST Projects") executed an Unconditional Guarantee of the Loan Agreement. (See *id.*, ¶ 6 and Exhibit 2 thereto.) On August 21, 2002, Mr. Stowell executed a Commercial Guaranty (the "Guaranty"), wherein he guaranteed Small Plates' indebtedness to Chase under the Loan Agreement. (*Id.* at ¶ 7 and Exhibit 3 thereto.) The underlying relevant obligations which the Guaranty secured are two (2) loans: Loan No. xxxxxxxx2006 ("Note -1") and Loan No. xxxxxxxx2953 ("Note – 2"). (See *Id.* at ¶ 8.) On August 21, 2002, the Parties executed a Future Advance Mortgage (the "Mortgage") in favor of Chase, securing Small Plates' obligations under the Loan Agreement with of a lien against Mr. Stowell's residence at 39640 Nine Mile Road, Novi, Michigan 48375 (the "Lien"). (*Id.* at ¶ 9 and Exhibit 4 thereto.)

At the time of the execution of the Loan Agreement, the Guaranty, and the Mortgage, ST Projects was a Member of Small Plates and Mr. Stowell was the Managing Member of ST Projects. In early 2007, due to a management dispute between Mr. Stowell, Mr. Ken Turkington, Mrs. Joyce Stowell, and Mr. John Stowell (collectively the "Co-Members") and the managing member of ST Projects, the Co-Members agreed to sever their relationship and sell their ownership interests in ST Projects back to ST Projects. (*Id.* at ¶ 11.)

To accomplish this, on or about April 20, 2007, the Co-Members entered into a Membership Purchase Agreement with ST Projects whereby they agreed to sell and assign their

{1782261:4}  2

individual interest in ST Projects (totaling 40%, the "Assignment Agreement") back to ST Projects (the "Purchase Agreement"). Pursuant to the Assignment Agreement, the Co-Members conditionally assigned their respective interests back to ST Projects. (*Id.* at ¶ 16.) After the execution of the Agreements, ST Projects defaulted under the Purchase and Assignment Agreements. (*Id.* at ¶ 19.) Because ST Projects subsequently defaulted and failed to cure the default, pursuant to the Assignment Agreements, the Co-Members' interest in ST Projects was subject to automatic reversion back to the Co-Members.[1] (*Id.* at ¶ 20.)

### B. Chase Negotiation and Agreement

Unrelated to ST Projects' default to the Co-Members, in September 2008, Mr. Stowell engaged in discussions with the VP of Chase Business Banking, Mr. Feras Shammami. Those discussions culminated in an agreement between Mr. Stowell and Chase, wherein Chase would release of Mr. Stowell from the Guaranty and discharge the Lien against his residence. (*Id.* at ¶ 21.)[2] Several weeks after Mr. Stowell's request was submitted to Chase, Chase agreed to release Mr. Stowell from his Guaranty and discharge the Lien against his residence.[3] As consideration for releasing Mr. Stowell from the Guaranty and discharging the Lien, Chase required Mr. Stowell and the other Co-Members (**who had no obligations to Chase**) to agree to subordinate ST Projects' obligations to Chase. (*Id.* at ¶ 24.) The Co-Members agreed to execute a subordination agreement subordinating ST Projects' obligation to Chase (the "Subordination Agreement"). (*Id.* at ¶ 22 and Exhibit 8 thereto.) The sole reason either of the Co-Members

---

[1] None of the Co-Members have reacquired or attempted to reacquire their ownership interest in ST Projects.
[2] Mr. Shammami submitted the request to release Mr. Stowell and discharge the Lien to Chase; which Chase ultimately agreed to under certain conditions. (See Exhibit A - Verified Complaint at ¶ 22).
[3] *Id.* at ¶ 23.

agreed to execute the Subordination Agreement was because Chase promised to release Mr. Stowell. (See Exhibit B - Affidavits of Co-Members at ¶ 2.)

### C. Approval Of The Agreement And Closing

After the Co-Members agreed to execute the Subordination Agreement, the parties began preparing to close on the agreement. On December 30, 2008 (the "Closing Date"), the parties proceeded to closing at which time all parties executed the Subordination Agreement. (Exhibit A – Verified Complaint at ¶ 28.) On the Closing Date Chase presented Mr. Stowell with a letter, wherein Chase outlined the conditions of the agreement, stating that the agreement was "contingent on the execution of the Subordination Agreement." Chase confirmed that it had released Mr. Stowell from the Guaranty. (*Id.* at ¶ 29 and Exhibit 10 thereto.) The letter also confirmed that Chase would be releasing Mr. Stowell's residence from the Lien, and that said discharge would be sent to the county for recording. (*Id.* at ¶ 30 and Exhibit 10 thereto.) (*Id.* at ¶ 31 and Exhibit 10 thereto.)

### D. Chase Refuses To Honor The Agreement

Subsequent to the Closing Date, Mr. Stowell learned that Chase had not honored its agreement. Mr. Stowell asked Mr. Shammami why Chase had not honored its agreement to release from the Guaranty and the Lien discharge. Mr. Shammami indicated that the final paper work from the SBA was "still in process". (*Id.* at ¶ 33 and Exhibit 11 thereto.) From November 2008 through January 2009, Mr. Shammami led Mr. Stowell to believe that it was Chase's intention to honor the agreement. (*Id.* at ¶ 34.)

As of early February 2009, Chase had yet to honor the agreement. In keeping with Chase's misrepresentation that it would honor the agreement, on February 2, 2009, Mr. Shammami told Mr. Stowell that [the release and discharge] were "good to go." (*Id.* at ¶ 36 and

Exhibit 12 thereto.) One week later, after delaying for more than two months, Mr. Shammami notified Mr. Stowell that Chase was putting a "halt" to closing on the agreement (which was closed on December 30, 2009) because Mr. Shammami "heard" that Mr. Stowell was going to reacquire his interest in ST Projects. (*Id.* at ¶ 37 and Exhibit 13 thereto.)

After receiving notice that Chase was refused to honor the agreement, counsel for Mr. Stowell contacted Mr. Shammami, and Mr. Shammami responded that he was no longer handling the file. (*Id.* at ¶ 39 and Exhibit 15 thereto.) Mr. Shammami indicated that the file was transferred to Chase's Managed Asset Group and that someone from there would be in touch. Approximately ten (10) days later, Ms. Kathy Monk, an Asset Manager at Chase in its Phoenix, Arizona office, contacted counsel for Mr. Stowell and requested time to "get [her] hands around the matter" before Chase would be able to respond to the request that Chase perform under the agreement. Counsel for Mr. Stowell agreed to give Ms. Monk time to evaluate the matter before contacting her again. Upon contacting Ms. Monk approximately one week later, Ms. Monk indicated that the file was referred to Chase's attorney back in Detroit, Michigan.

On March 25, 2009, after Mr. Stowell had been given the runaround from Chase for three months, counsel for Mr. Stowell sent a letter to Chase once again requesting that Chase honor its agreement; and notifying Chase that if it did not honor its agreement, Mr. Stowell would file a law suit for enforcement of the same. (*Id.* at ¶ 43 and Exhibit 16 thereto.)

On April 1, 2009, to further delay resolution, Chase's attorney requested that Chase be given until April 15, 2009 to investigate the matter. (*Id.* at ¶ 44 and Exhibit 17 thereto.) Despite the runaround, Mr. Stowell consented to Chase's request. (*Id.* at ¶ 46.) Then, consistent with its pattern of bad faith, on April 13, 2009, Chase's attorney sent a letter to counsel for Mr. Stowell, wherein it stated that Chase would not honor the agreement. (*Id.* at ¶ 47 and Exhibit 18 thereto.)

Chase's reasons for refusing to release Mr. Stowell from the Guaranty and discharge the Lien are that Mr. Stowell might reacquire his ownership interest in ST Projects and that the ST Projects loan is in serious default.  (*Id.* at ¶ 48 and Exhibit 18 thereto.)

Chase states in its Answer to the Complaint that Mr. Stowell misrepresented to Chase that he would not reacquire his interest.  (See Exhibit C - Chase Answer at ¶ 29.)  However, during discussions about the deal with Mr. Shammami, Mr. Stowell never indicated or implied the he would not reacquire his interest.  (See Exhibit B - Affidavit of Todd Stowell at ¶ 9.)  In fact, Mr. Shammami was fully aware of the potential automatic reversion of Mr. Stowell's interest based ST Projects' default.  Mr. Shammami had the assignment documents in his possession well before the agreement between Mr. Stowell and Chase.  *Id.* at ¶11.

As already discussed, Chase's agreement to release Mr. Stowell was contingent only on the Co-Members subordinating their debt to Chase's and the Co-Members executing the Subordination Agreement, which required them to give up their right to collect future payments from ST Projects.  The Co-Members executed the Subordination Agreement on the Closing Date.  Chase's agreement to release Mr. Stowell was not contingent on Mr. Stowell forbearing from reacquiring an ownership interest in ST Projects. Nor was Chase's agreement to release Mr. Stowell contingent on the underlying loan being current. (Exhibit A - Verified Complaint at ¶ 52.)

   E.   **Chase's Subsequent Action Against Mr. Stowell**

In addition to its prior actions, on or about April 13, 2009, Chase sent Mr. Stowell a notice of acceleration of the Notes. (*Id.* at ¶ 57.)  Chase then requested entry into Mr. Stowell's residence to have it appraised for foreclosure purposes. (*Id.* at ¶ 58 and Exhibit 20 thereto.)  On or about April 30, 2009, Mr. Stowell received a delinquency notice from Chase.  (*Id.* at ¶ 59 and

Exhibit 21 thereto.) The notice states that Chase may report the late payments on Mr. Stowell's credit report. (*Id.* at ¶ 60 and Exhibit 21 thereto.)

From the moment the Parties executed the Subordination Agreement, Chase's actions have been wholly inconsistent with the agreement and its representations, which were clearly stated in the letter presented to Mr. Stowell. But facing the likelihood that Small Plates could not pay its debt, Chase reneged on its agreement and set forth contrived allegations of some wrongdoing on the part of Mr. Stowell. However, the fact that Small Plates may be insolvent or unable to pay its bills is irrelevant in the instant matter, and Chase should be required to honor its agreement. Based on these facts, Mr. Stowell seeks judgment as a matter of law.

## II.     Legal Argument

### A.     Standard for Summary Judgment

Federal Rule of Civil Procedure Rule 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The United States Supreme Court has affirmed courts' use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327; 106 S. Ct. 2548, 2555 (1986). Summary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *Id. at 322.* The Supreme Court has held that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Sixth Circuit has recognized and supported Supreme Court decisions that have encouraged the granting of summary judgment. *Historic Preservation Guild of Bay View v. Burnley,* 896 F. 2d 985, 993 (6th Cir. 1989) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)). Courts have noted that the summary judgment motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F. 2d 934, 937 (5th Cir. 1989) (*quoting Celotex*, 477 U.S. at 327).

Mr. Stowell is entitled to summary judgment insofar as he and Chase entered into a binding agreement. Chase subsequently reneged on the agreement, and attempts to justify its breach with unsupported allegations that Mr. Stowell agreed to forbear from reacquiring an interest in ST Projects. Even if the court entertains Chase's defense to breach and finds that Mr. Stowell's abstention of ownership in ST Projects was a condition to the agreement, Mr. Stowell has abstained from owning any interest. Any evidence of this purported condition as a term of the agreement or any evidence of inquiries into reacquiring an ownership by Mr. Stowell, if allowed, is immaterial and does not prevent the Court from entering Judgment in favor of Mr. Stowell.

Chase has no meritorious defense to its breach. As stated below, there are no genuine issues of material fact, and Mr. Stowell is entitled to summary judgment as a matter of law.

**B.    Chase Cannot Establish A Genuine Issue Of Material Fact And Mr. Stowell Is Entitled To Judgment As A Matter Of Law.**

Mr. Stowell's claim is predicated on general contract principals and Chase's breach. To recover for breach of contract under Michigan law, Mr. Stowell must prove: 1) the existence of a contract between the parties; 2) the terms of the contract; 3) that Chase breached the contract; and 4) that Chase's breach caused him injury. *Webster v. Edward D. Jones & Co., L.P.,* 197

F.3d 815, 819 (6th Cir.1999). There are no genuine issues of material facts, as Chase's breach is irrefutable. Therefore, Summary Judgment is appropriate.

### i. Chase cannot dispute that a contract exists, nor can Chase dispute the terms of the contract.

The parties undeniably entered into a contract whereby Chase agreed to release Mr. Stowell from the Personal Guaranty and discharge the Lien upon the other Co-Members execution of the Subordination Agreement. The agreement was finally memorialized on December 30, 2008 and is clearly outlined in the December 30, 2008 letter from Chase to Mr. Stowell. The letter unequivocally states:

> Please use this letter as confirmation that you [Mr. Stowell] are no longer guarantor on the following…
>
> Furthermore, in relation to the mortgage on your residence…please use this letter as confirmation that it will be released from security on Loan # 1 and lien discharge will be sent to the county for recording…
>
> All of the above **is contingent on the execution of a Subordination Agreement**…

(Exhibit A - Verified Complaint, Exhibit 10). (Emphasis added.) Chase acknowledges the existence of the contract and the foregoing language. In its Answer to the Verified Complaint Chase states, "Chase admits that [the letter] was provided to [Mr. Stowell] and states that the terms of the letter speak for themselves."

The terms of the letter, are clear. The only condition required by Chase was that Mr. Stowell and the other Co-Members execute the Subordination Agreement. Any claim of any additional conditions is unsupported by evidence.

Chase has breached the contract, thereby causing injury to Mr. Stowell, by failing and refusing to release Mr. Stowell from the Guaranty and by not discharging the Lien.

Chase attempts to defend or explain its breach by alleging other terms/conditions reached in prior negotiations. (Exhibit C - Chase Answer at ¶ 29). Chase wants to introduce evidence of negotiations leading up to the December 30, 2008 letter. Chase cannot rely upon the parol evidence it alleges was a part of the agreement.

### C. The Parol Evidence Rule Precludes Chase From Relying On Mr. Stowell's Alleged Statement

Chase states multiple times in its Answer to the Verified Complaint that Mr. Stowell's stated intention was not to reacquire an interest in ST Projects. Chase uses this defense broadly and claims complete reliance on Mr. Stowell's representation. Yet, Chase failed to include this important term in the December 30, 2008 letter. The parol evidence rule precludes Chase from introducing this so-called term now.

#### i. Chase cannot rely on parol evidence as a defense to its breach.

Chase alleges that a condition to the contract was Mr. Stowell's agreement to abstain from reacquiring an interest in ST Projects; and that Mr. Stowell misrepresented his true intention. This is Chase's defense or justification to breaching the agreement. Chase's allegation that Mr. Stowell agreed to abstain from reacquiring an interest in ST Projects is an attempt to improperly introduce parol evidence of the parties' negotiations. "Parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible to vary the terms of a contract which is clear and unambiguous." *Schmude Oil Co. v. Omar Operating Co.,* 184 Mich.App. 574, 580; 458 N.W.2d 659 (1990). Extrinsic evidence may be considered to answer the threshold question of whether the parties intended the writing to be a complete expression of the agreement. *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir.1984).

Chase relies on Mr. Shammami's allegations of what Mr. Stowell allegedly stated relative to Mr. Stowell's future interest in ST Projects. Even if Mr. Shammami's allegations of prior negotiations had merit, those negotiations were not memorialized or captured in the letter as a term of the agreement. But any attempt by Chase to argue that the December 2009 letter was not a complete expression of the agreement would be disingenuous. Chase repeatedly expressed in its Answer that its defense is that Mr. Stowell misrepresented his intentions. Never once did Chase claim that the letter was not an expression of the agreement. Chase cannot argue that the letter was not an embodiment of the agreement.

As such, the term Chase now insists was a condition of the agreement only serves to contradict or vary what was unambiguously memorialized on December 30, 2008. Chase should not be allowed to rely on parol evidence as a defense to its breach.

### ii. Chase cannot rely on exceptions to the parol evidence rule.

Exceptions to the parol evidence rule would allow consideration of extrinsic evidence or prior or contemporaneous negotiations if Chase was asserting, "(1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing." *NAG Enterprises, Inc. v. All State Industries, Inc.,* 407 Mich. 407, 411; 285 N.W. 2d 770 (1979).

Chase claims that Mr. Stowell's "stated intention" was that he would not reacquire an ownership interest, and that Mr. Stowell misrepresented or omitted his true intentions with regard to an ownership interest (*NAG* exception 2). Chase cannot support its defense of misrepresentation. Chase also claims that Mr. Stowell's abstention was a term of the agreement

that was not including in the December 30, 2008 letter (*NAG* exception 4). Even if the agreement included the condition that Mr. Stowell would abstain from ownership, Mr. Stowell has abstained from ownership.

Chase entered a fair agreement, which it reneged on more than a month after Mr. Stowell had honored his end of the bargain. Chase now wants the Court to void the agreement or otherwise validate its questionable actions.

### iii. Mr. Stowell has not re-acquired an interest in ST Projects.

Assume, for the sake of argument, that Chase's agreement to release Mr. Stowell from the Guaranty and discharge the Lien was in fact contingent on Mr. Stowell's permanent relinquishment of any interest in ST Projects. Chase's defense to breach still fails.

Chase claims in its Answer that Mr. Stowell's release was subject to his execution of the Subordination Agreement, as well as Mr. Stowell agreeing to have no further interest, direct or indirect, in ST Projects. (Exhibit C - Chase Answer, ¶ 21.) Even if this is true, Chase fails identify any event or occurrence that would support its decision not to honor the agreement. Mr. Stowell has not engaged in any activity that would be in violation of any agreement to abstain from direct or indirect interest in ST Projects. Chase's only defense to breach is an event that never occurred. Even if Mr. Stowell agreed to abstain from ownership in ST Projects, Chase's actions are premature and are in breach of the agreement.

Chase has asserted misrepresentation or omission as its defense to breaching the agreement. Chase seeks to introduce parol evidence of its allegation that Mr. Stowell agreed to forego any ownership in ST Projects. As Chase has stated, the terms of the agreement speak for themselves – execution of the subordination agreement in exchange for Mr. Stowell's release from his obligations to Chase. Chase cannot now offer extrinsic evidence to vary or contradict

those self-evident terms.  Moreover, Chase cannot rely on exceptions to the rule to rescue it from its obligation to release Mr. Stowell from his obligations.

Finally, even if what Chase asserts as its defense to breach is true, Chase reneged on the deal without justification, as Mr. Stowell **never** reacquired an ownership interest in ST Projects. Chase acted prematurely and breached the agreement, and now maintains that it was tricked into the agreement.  Chase's actions since December 30, 2008 have been wholly disingenuous; and, its further actions in:  1) refusing to honor the agreement; 2) forcing Mr. Stowell to expend his limited resource to file and prosecute this law suit; 3) seeking to foreclose on his residence and enforce the Guaranty; and 4) filing a baseless counterclaim; are all rooted in Chase's attempt to hammer Mr. Stowell into submission.

### III.   Conclusion

For the reasons stated above, Plaintiff Todd Stowell urges the Court to grant summary judgment with respect to his Verified Complaint and to Chase's counterclaim, and to issue judgment against Defendant JP Morgan Chase Bank, N.A., requiring it to:

A. Release Todd Stowell from his Guaranty of Loan No. xxxxxxxxx2006;

B. Release Todd Stowell from his Guaranty of Loan No. xxxxxxxxx2953; and

C. Immediately cause the Lien against Todd Stowell's residence at 39640 Nine Mile Road, Novi, Michigan 48375 to be discharged; or

D. Award Mr. Stowell money damages in an amount sufficient to satisfy the foregoing obligations to Chase; and

    E.  Pay Todd Stowell Reasonable attorney fees incurred in prosecution of this matter.

Respectfully submitted,

McDONALD HOPKINS PLC

Dated: September 22, 2009

By:   */s/ Earl R. Johnson*
LAWRENCE V. STAWIARSKI (P54831)
EARL R. JOHNSON (P70359)
Attorneys for Plaintiff/Counter-Defendant
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
(248) 646-5070 phone
(248) 646-5075 fax
ejohnson@mcdonaldhopkins.com

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 22, 2009 the foregoing instrument was filed with the Clerk of the Court using the ECF system, which then sent notice to counsel of record for the above-captioned matter.

Signature:  */s/ LaVonne G. Morgan*
          LaVonne G. Morgan, Legal Secretary
          McDonald Hopkins PLC
          Attorneys for Plaintiff/Counter-Defendant

---